UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| **MICHAEL MCADAMS,** *individually and in his official capacity as executor of the estate Trustee for Marie F. McAdams* | CIVIL ACTION |
| **VERSUS** | |
| **RECEIVABLE RECOVERY SERVICES, LLC** | NO. 19-00248-BAJ-EWD |

## RULING AND ORDER

Before the Court is **Defendant's Motion For Judgment On The Pleadings Or For Summary Judgment (Doc. 29)**, seeking dismissal of Plaintiff's Complaint (Doc. 1). Plaintiff opposes Defendant's Motion. (Doc. 30). For the reasons stated herein, Defendant's Motion is denied, without prejudice to Defendant's right to re-urge its position after affording Plaintiff the opportunity to obtain additional discovery.

## I. ALLEGED FACTS

This action alleges unlawful debt collection practices under the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq.* ("FDCPA"). Plaintiff's Amended Complaint (Doc. 17), Defendant's Answer To Amended Complaint And Counterclaim (Doc. 19), and various documents submitted in support of Defendant's Motion and Plaintiff's Opposition establish the following:

1

Defendant is a debt collector. Plaintiff, the named executor of his mother's estate, alleges that Defendant has engaged in unlawful and abusive collection tactics in its efforts to recover debts incurred by Plaintiff's late mother prior to her death on November 3, 2018. The contested debt totals $500.95, and relates to ambulance services provided to Plaintiff's mother on at least two separate occasions.

Defendant's attempts to collect the contested debt began December 6, 2018, when it sent its first dunning letter[1] demanding payment of the full $500.95. (Doc. 9-1 at 9.). Defendant addressed the December 6 letter to "ESTATE OF MARIE MCADAMS," identified a unique account number (5283765) and the origins of the debt (Acadian Ambulance Services), and specifically requested that the letter be forwarded "to the Executor … of the below estate" for acknowledgement "in writing by return mail." (*Id.*).

Plaintiff responded by letter dated December 18, 2018. Plaintiff's December 18 letter identifies Plaintiff as "Executor, Estate of Marie McAdams," identifies the account number listed on Defendant's December 6 dunning letter, and, consistent with the requirements of the FDCPA's dispute provisions, states that "[t]he validity of this debt is hereby disputed," and requests "copies of the original, unaltered invoices" supporting the alleged debt. (Doc. 9-1 at 12). Plaintiff sent his December 18 letter by certified U.S. Mail, requesting Defendant's signature upon delivery. U.S. Post Office tracking records indicate that Defendant signed for receipt of Plaintiff's letter on December 26, 2018. (Doc. 9-1 at 13-17). Despite these tracking records,

---

[1] A dunning letter is a demand for payment to a delinquent debtor. *In re Huffman*, 505 B.R. 726, 744 n.19 (Bankr. S.D. Miss. 2014) (citing Black's Law Dictionary 502 (6th ed. 1990)).

2

Defendant contends that it did not receive Plaintiff's letter until May 7, 2019, *after* Plaintiff initiated this action, "when a copy of it was emailed to [Defendant] by [Plaintiff's] attorney." (Doc. 29-3 at p. 3).

On December 27, 2018, and again on January 7, 2019, Defendant sent additional letters seeking to recover the contested debt. These letters were also addressed to "ESTATE OF MARIE MCADAMS," state the same account number, and indicate a balance due of $500.95, but do not acknowledge Plaintiff's December 18 letter. (Doc. 9-1 at 10-11). Among other things, Defendant's December 27 letter states: "We sent notification previously requesting that our client's claim be forwarded to the Executor, Executrix, Administrator or Administratrix of the below captioned Estate. To date we have failed to receive a response to our request." (Doc. 9-1 at 11). Defendant's January 7 letter includes: "NOTICE OF DEFAULT … Your account is seriously past due and payment in full is required." (Doc. 9-1 at 10).

In addition to these written correspondences, the parties engaged in at least two recorded phone conversations regarding the contested debt, the first on January 1, 2019, and the second on February 1, 2019. Transcripts produced by Defendant show that on each occasion Plaintiff initiated the call, identified himself as the executor of Mrs. McAdams' estate, and referenced the same account number appearing on Defendant's dunning letters. (*See* Doc. 9-1 at pp. 19-26). The transcripts further indicate confusion among the parties regarding Plaintiff's status as executor, the amount of the alleged debt, what services resulted in the alleged debt, and

3

whether Defendant maintained one or two accounts against Mrs. McAdams' estate. (*Id.*).

It appears that communications among the parties stopped following the February 1 phone conversation.

## II. PROCEDURAL HISTORY

On April 24, 2019, Plaintiff filed this action alleging three violations of the FDCPA. (Doc. 1 at ¶¶ 25-27). On July 9, 2019, Plaintiff filed his Amended Complaint, adding three more violations. (Doc. 17 at ¶¶ 39-44). On July 23, 2019, Defendant filed its Answer, which includes a counterclaim seeking a declaration that its actions did not violate the FDCPA. (Doc. 19 at pp. 10-21).

On November 19, 2019, Defendant filed the instant Motion For Judgment On The Pleadings Or For Summary Judgment, seeking dismissal of Plaintiff's action with prejudice. (Doc. 29). Initially, Defendant contends that Plaintiff lacks standing to pursue his claims because he is merely the executor of his mother's estate, and therefore not a "consumer" within the meaning of the FDCPA. (Doc. 29-3 at pp. 6-8). Alternatively, Defendant argues that this action cannot proceed until Plaintiff joins his siblings as additional plaintiffs, because these surviving children of Mrs. McAdams are necessary parties to the dispute. (*Id.* at p. 8). Finally, Defendant insists that each of Plaintiff's alleged FDCPA violations fails on the merits. (*Id.* at pp. 8-22).

On December 10, 2019, Plaintiff filed his Response. (Doc. 30). Plaintiff contends that as estate executor he maintains standing to pursue his claims, and, further, that Defendant's Motion should be denied or stayed because he lacks sufficient discovery to adequately oppose on the merits. (Doc. 30). In support, Plaintiff

4

submits a declaration stating that Defendant has failed to adequately respond to his written discovery requests, and that, at minimum, he must be allowed to depose the following parties prior to a ruling on the merits: (1) Defendant's agent or employee who purportedly signed for receipt of Plaintiff's December 18 letter; (2) Defendant's corporate representative; and (3) Acadian Ambulance Service's corporate representative. (Doc. 30-1 at 3).

On January 2, 2020, the Court stayed further discovery in this action pending the disposition of Defendant's Motion. (Docs. 45, 46).

### III. ANALYSIS

#### A. Applicable Standard of Review

Defendant seeks judgement on the pleadings under Rule 12(c), or, alternatively, summary judgment under Rule 56. A motion for judgment on the pleadings is reserved for "cases where the material facts are not in dispute and a judgment on the merits can be rendered by looking to the substance of the pleadings and any judicially noticed facts." *Hebert Abstract Co. v. Touchstone Properties, Ltd.*, 914 F.2d 74, 76 (5th Cir. 1990). Here, at minimum, the parties dispute the legal significance of Plaintiff's December 18 letter; indeed, they dispute whether Defendant even received it. (*Compare* Amended Complaint at ¶¶ 24-27, *with* Answer at ¶¶ 24-27). This dispute is obviously material to a determination of Defendant's liability under the FDCPA—which provides (among other things) that upon receiving timely notice that an alleged debt is disputed, a debt collector "shall cease collection" until it has obtained documents supporting the alleged debt and provided the same to the consumer, 15 U.S.C. § 1692g(b), *see also id.* at § 1692c(c) (requiring debt collector to

5

cease communications after receiving written notice that the consumer refuses to pay a debt)—and precludes judgment on the pleadings. *See Hebert Abstract Co.*, 914 F.2d at 76. Thus, Defendant's Motion will be reviewed as a motion for summary judgment under Rule 56.

### B. Summary Judgment Standard

A Court may grant summary judgment only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute regarding a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When ruling on motions for summary judgment, courts are required to view all inferences drawn from the factual record in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Coleman v. Houston Independent School Dist*, 113 F.3d 528, 533 (5th Cir. 1997).

Under Rule 56(d), the nonmoving party may oppose summary judgment by submitting a sworn statement asserting that "for specified reasons, it cannot present facts essential to justify its opposition." Fed. R. Civ. P. 56(d). Upon receipt of the nonmoving party's statement, the Court may "defer considering the [summary judgment motion] or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order." *Id*.

> A motion for a continuance under Rule 56(d) is broadly favored and should be liberally granted. Indeed, when the party opposing the summary judgment informs the court that its diligent efforts to obtain evidence from the moving party have been unsuccessful, a continuance of a motion for summary judgment for purposes of discovery should be

6

granted almost as a matter of course. But the moving party must demonstrate how the requested discovery pertains to the summary judgment motion and must have diligently pursued the relevant discovery.

*Castro v. Texas Dep't of Criminal Justice*, 541 F. App'x 374, 377 (5th Cir. 2013) (quotation marks and citations omitted).

### C. Standing

Off the top, Defendant contests Plaintiff's standing to pursue this action, as Defendant's collection efforts were addressed to the Estate of Marie McAdams. Essentially, Defendant contends that despite being the named executor of Mrs. McAdams' Estate, Plaintiff is not a "consumer" under the FDCPA—and therefore lacks standing to challenge Defendant's activities—because Plaintiff did not seek to open the succession and obtain an order of appointment until January 2019, *after* Defendant's collection efforts had already begun. (Doc. 29-3 at pp. 6-8).

The Court is not persuaded by Defendant's position. The FDCPA's express purpose is "to eliminate abusive debt collection practices by debt collectors, … and to promote consistent State action to protect *consumers* against debt collection abuses." 15 U.S.C. § 1692(e) (emphasis added). Section 1692c(d) specifically provides that for purposes of determining whether a debt collector's communication is abusive or unlawful, "the term 'consumer' includes the consumer's … executor, or administrator." 15 U.S.C. § 1692c(d). Plaintiff, the undisputed legal executor of Mrs. McAdams' estate, alleges that Defendant's communications violate the FDCPA. Unquestionably, Plaintiff is a consumer within the meaning of the FDCPA and has standing to bring this action. *Id.*; *see McNab v. Statewide Recovery Ser. Inc.*, No. 99-

7

1571, 2000 WL 135839, at *2 (E.D. La. Feb. 4, 2000) (Vance, J.) ("Because plaintiff is [the decedent's] spouse and the legal representative of his estate, she is a consumer within the meaning of the FDCPA and has standing to bring this action."); *see also Wright v. Fin. Serv. of Norwalk, Inc.*, 22 F.3d 647, 650 (6th Cir. 1994) (estate executor maintained standing to pursue FDCPA claim on behalf of estate because the FDCPA's protections extend to "those persons, such as [an executor], who 'stand in the shoes' of the debtor or have the same authority as the debtor to open and read the letters of the debtor.").[2]

### D. Failure To Join Additional Parties

Further, the Court rejects Defendant's argument that this action cannot proceed without joining Plaintiff's siblings as parties. Louisiana law expressly provides Plaintiff the authority to pursue this action, with or without participation of additional legatees. La. C.C.P. art. 685; *Anderson v. Collins*, 26,142 (La. App. 2 Cir. 1/6/95), 648 So. 2d 1371, 1377 ("[U]nder Louisiana procedural law, only the succession

---

[2] This conclusion stands despite the fact that Plaintiff did not obtain an order of appointment until after Defendant commenced its collection efforts. It is undisputed that Mrs. McAdams' will names Plaintiff as the duly authorized executor, and Defendant has failed to identify any provision of Louisiana law *or* the FDCPA that prevents Plaintiff from representing the estate prior to opening the succession or obtaining an appointment order. The dearth of any such authority is hardly surprising, given that an appointment order confirming a named executor is essentially a formality under Louisiana law. *See* La. C.C.P. art. 3082; *In re Succession of Coon*, 2016-0240 (La. App. 1 Cir. 10/31/16), 207 So. 3d 419, 425 ("Universally, the courts as far as possible carry out the intention of the testator by seeing that the administration of the estate is committed to the one designated by him." (citing *Succession of Browne*, 150 So.2d 555, 556 (La. 1963)). Additionally, a determination that Plaintiff was prevented from representing the Estate's interests prior to obtaining an appointment order would be inconsistent with "the broad scope of the FDCPA," because "[o]therwise, a debt collector's liability would depend upon fortuities such as an alleged debtor's death," and how quickly the named executor could rush to the courthouse to open the succession and obtain an appointment order. *See Wright*, 22 F.3d at 650.

8

representative can enforce a right of the deceased or of the succession while the succession is under administration."), *writ denied* 95-0629 (La. 4/21/95), 653 So. 2d 576, *and writ denied* 95-0783 (La. 4/21/95), 653 So. 2d 576.

### E. Merits

Finally, the Court agrees with Plaintiff that additional discovery is required before Defendant's Motion may be decided. As explained above, the parties' dispute regarding the significance and effect of Plaintiff's December 18 letter is of critical importance and will benefit from depositions of Defendant's agent that allegedly signed for receipt of the letter, and Defendant's corporate representative. Additionally, the Court agrees that a deposition of the representative of Acadian Ambulance Services is likely beneficial, in light of the apparent confusion regarding the total amount of the alleged debt, and what services resulted in the alleged debt. Despite his diligence, Plaintiff has been prevented from pursuing such evidence due to the stay of discovery pending resolution of Defendant's Motion.

As such, Defendant's Motion will be denied, without prejudice to Defendant's right to re-urge its position after Plaintiff has been allowed sufficient opportunity to obtain this additional discovery. *See Castro*, 541 F. App'x at 378 (district court abused discretion by denying plaintiff's Rule 56(d) request for a continuance to obtain additional discovery before deciding defendant's dispositive motion).

### IV. CONCLUSION

Accordingly,

**IT IS ORDERED** that **Defendant's Motion For Judgment On The Pleadings Or For Summary Judgment (Doc. 29)** is **DENIED,** without prejudice

9

to Defendant's right to seek summary judgment after Plaintiff has been allowed sufficient opportunity to obtain additional discovery. Counsel for Defendant is instructed that all future pleadings shall comply with the Court's Local Rules, including page limitations, and shall not incorporate cross-references to previously filed pleadings. Failure to comply with the Court's Local Rules may result in sanctions, including summary denial.

In light of the forgoing,

**IT IS FURTHER ORDERED** that the stay of discovery deadlines (Docs. 45, 46) is **LIFTED**.

**IT IS FURTHER ORDERED** that this matter is referred to the Magistrate Judge for the purpose of setting a new trial date and related deadlines.

Baton Rouge, Louisiana, this 20th day of October, 2020

_____
**JUDGE BRIAN A. JACKSON**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**